IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ARTHUR C. STRICKLIN, DOROTHY ANN STRICKLIN,
VAUGHAN D. STRICKLIN, KATHY A. STRICKLIN,
COREY V. STRICKLIN, TENA STRICKLIN and
M. BETH McINTYRE,

    Plaintiffs,

v.　　　　　　　　　　　　　　　　　　Civil Action No. 5:12CV8
　　　　　　　　　　　　　　　　　　　　　　　　　　(STAMP)
FORTUNA ENERGY INC.
(now Talisman Energy USA Inc.),
RANGE RESOURCES- APPALACHIA, LLC,
CHESAPEAKE APPALACHIA, LLC,
STATOIL USA ONSHORE PROPERTIES, INC.
and JAMESTOWN RESOURCES, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

I.  Background

The plaintiffs commenced this action by filing a complaint in the Circuit Court of Ohio County, West Virginia.  The complaint alleges that the plaintiffs entered into oil and gas leases with Talisman Energy USA Inc. ("Talisman" f/k/a Fortuna Energy Inc.)[1]

---

[1]Attached to the complaint is a lease dated January 25, 2006 by and between plaintiffs Vaughn D. Stricklin, Kathryn A. Stricklin, Corey Stricklin, and Talisman.  (Compl. Ex. 1.)  As set forth in the joint notice of removal, the defendants were also able to locate a January 25, 2006 lease with materially identical terms by and between plaintiffs Arthur D. Stricklin, Dorothy Ann Stricklin, and Talisman.  (Notice of Removal Ex. 6.)  The defendants were unable to locate any January 25, 2006 oil and gas lease to which plaintiffs Tena Stricklin and M. Beth McIntyre are parties.  However, for the purpose of these motions to dismiss, the defendants have stated that they accept the truth of the allegation that these plaintiffs are parties to a January 25, 2006 lease.

and that Talisman later impermissibly assigned its interest in the plaintiffs' leases to Range Resources-Appalachia, LLC ("Range Resources"), which subsequently assigned its interest to Statoil USA Onshore Properties Inc. ("Statoil") and Chesapeake Appalachia, LLC ("Chesapeake Appalachia"), which then assigned a partial working interest to Jamestown Resources, LLC ("Jamestown"). According to the plaintiffs, the terms of the January 25, 2006 leases did not permit Talisman to assign its interest in the leases. The plaintiffs seek a declaration that the leases are void and that the defendants have no right to enter, drill, or pool the plaintiffs' property. The plaintiffs further seek unspecified compensatory damages, punitive damages, and attorneys' fees. The defendants removed the case to this Court on January 18, 2012.

On January 24, 2012, defendants Chesapeake Appalachia, Statoil, Jamestown, and Range Resources filed a motion to dismiss. In support of their motion, the defendants argue that the leases expressly authorize assignment. Additionally, the defendants contend that the plaintiffs' claims have no merit under West Virginia law, which provides for free assignment in the absence of a clear and unequivocal statement requiring prior consent. With regard to the plaintiffs' demand for a declaration that the assignments are void and the leases are terminated, the defendants assert that forfeiture is impermissible. On January 25, 2012, defendant Talisman also filed a motion to dismiss, incorporating by

reference the reasoning and authority cited by the other defendants in their motion to dismiss. Talisman also argues that it is a basic tenet of oil and gas leases that, in the absence of an express agreement in the lease concerning matters of assignment, the lessee it entitled to assign the lease.

The plaintiffs filed a response in opposition to the defendants' motions to dismiss on February 15, 2012, in which they argue: (1) the language of paragraph 22 of the leases authorizes assignment only with the express permission of the lessor; (2) in the alternative, if the contract is ambiguous, it should be construed against the party that drafted it; (3) leases are not required to contain a provision expressly authorizing assignment; and (4) the right to forfeiture should not be determined by a motion to dismiss.

On February 22, 2012, the defendants filed a reply in support of both motions to dismiss. According to the defendants, the only reasonable reading of paragraph 22 is that it expressly provides for assignment by either the lessor or the lessee. The defendants also argue: (1) the existence of an ambiguity proves that the restriction is not clear; and (2) the complaint does not plead facts to support forfeiture. Both motions to dismiss are currently pending before this Court. For the reasons set forth below, this Court finds that the motions to dismiss must be granted in part and denied in part.

II. <u>Applicable Law</u>

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true. <u>Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc</u>, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and

essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949).  Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

### III.  Discussion

In support of their motions to dismiss, the defendants first argue that the plain language of paragraph 22 of the leases expressly authorizes assignment.  The plaintiffs, however, read paragraph 22 as requiring their consent before an assignment can be made.  Paragraph 22 of the leases states:

> 22.  BINDS SUCCESSORS AND ASSIGNS
>
> If the interest of either Lessor or Lessee is assigned, and the right to assign in whole or in part is expressly permitted, all rights, duties and liabilities under this Lease shall enure to the benefit of and be binding on the assignee and the assignee's respective heirs, executors, administrators, successors and assigns.

(Notice of Removal Ex. 3 and 6.)  The parties agree that the general rule, under West Virginia law, "is that unless there is some statutory prohibition or an express provision in the lease to the contrary, a lease on real property . . . is assignable." Randolph v. The Koury Corp., 312 S.E.2d 759, 762 (W. Va. 1984); see also Syl. pt. 2, Easley Coal Co. v. Brush Creek Coal Co., 112 S.E. 512 (W. Va. 1922) ("Being a restraint upon alienation, a condition against assignment by a lessee or an assignee of a lessee is governed by the rule of strict construction, and it does not exist unless it has been clearly and definitely provided in the lease or some other written instrument made collateral thereto.").  The parties disagree, however, as to the interpretation of the assignment clause.

The defendants argue that because the phrase "and the right to assign . . . is expressly permitted" ("operative clause") is written in the present tense, it means that the right to free assignment is being granted in the leases and not being contemplated as a future requirement.  Further, the defendants contend that the operative clause does not contain any language creating a condition precedent or any other features that would suggest something other than what the plain language states -- that assignment is expressly authorized.  In support of their interpretation, the defendants point to the fact that the operative clause is set apart from the rest of the sentence with commas,

6

underscoring that its intended role is as a stand-alone authorization of the right to assign. The defendants also highlight the heading of paragraph 22, "Binds Successors and Assigns," which makes no mention of a restriction on assignment.

Predictably, the plaintiffs argue an alternative interpretation of the operative clause. In plaintiffs' view, "and the right to assign . . . is expressly permitted" clearly expresses the intent of the parties that each must obtain the express permission of the other to assign the leases. The plaintiffs argue that when read in the context of the entire provision, the operative clause is clearly a conditional statement which should be interpreted as "if the lease is assigned and if the right to assign is expressly authorized." The plaintiffs also contend that the heading in no way speaks to whether or not the assignment must be authorized and was inserted for convenience of reference only. Had the defendants sought to allow free assignment of the leases, the plaintiffs argue, they could have easily omitted the operative clause, which only serves to place limits on the ability to assign.

This Court finds that paragraph 22 is susceptible to multiple interpretations and that reasonable minds "might be uncertain or disagree as to its meaning." Lee v. Lee, 721 S.E.2d 53, 56 (W. Va. 2011). Thus, paragraph 22 is, at best, ambiguous and must be construed against the drafter. See C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe, 532 U.S. 411, 423 (2001) ("In

7

appropriate cases, we apply the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it.") (internal quotations omitted); Syl. pt. 1, Henson v. Lamb, 199 S.E. 459 (W. Va. 1938) ("An ex parte paper, written and prepared by one party, which is contradictory in its parts and clearly ambiguous, is open to explanation by extraneous evidence, and is to be construed most strongly against said party."). Construing the ambiguity against Talisman, this Court cannot, at this time, find that paragraph 22 expressly authorizes assignment without the parties' prior consent.

In their reply in support of the motions to dismiss, the defendants aver that if this Court finds paragraph 22 to be ambiguous, the plaintiffs' claim necessarily fails because the existence of an ambiguity means that the provision is not a "clear" restriction on assignment. This Court agrees with the defendants that only "clear" and "definite" restrictions on assignments are enforceable. See Randolph, 312 S.E.2d at syl. pt. 1. However, a finding that paragraph 22 is ambiguous does not prevent this Court from further construing the ambiguity to determine whether it is an enforceable restriction. In fact, adopting the view of the defendants would require the abrogation of a fundamental rule of contract interpretation -- that is, finding that paragraph 22 is ambiguous and therefore an unclear and impermissible restriction on assignment would be construing the ambiguity in favor of the

drafter, rather than against the drafter. See also Godley v. Kentucky Res. Corp., 640 F.2d 831, 836 (6th Cir. 1981) (finding that an ambiguous restriction on the right to assign must be construed most strongly against the party seeking to extend it to include alterations not clearly expressed by the language of the covenant).

In D-F Fund VIII, L.L.C. v. Resolution Trust Corp., No. CA 3-96-CV-3367-R, 1998 WL 7147 (N.D. Tex. Jan. 5, 1998), the United States District Court for the Northern District of Texas considered the question of whether a deed's repurchase option, which was ambiguous and would result in forfeiture of real property, was unenforceable. Id. at *2. In discussing ambiguity and forfeiture, the court concluded that although an ambiguous forfeiture clause must fail, "it need not leave the grantor with no means of enforcing the restriction. It simply denies the grantor the remedy of forfeiture. Injunctive relief or damages may still be sought, or at least such relief is not precluded merely by dint of ambiguity." Id. at *3. An instructive comparison can be made between the discussion regarding the forfeiture provision in D-F Fund VIII and the assignment provision in this case. The Texas court explained that because forfeitures are "harsh and punitive in their operation," forfeiture provisions are not to be enforced when their meaning "is uncertain and obscure." Id. Similarly, restraints upon alienation are disfavored, and a condition against

assignment must be clearly and definitely proved.  Even so, the goal of avoiding ambiguous forfeitures and unclear restrictions on assignment is not served by denying a plaintiff remedies.  After all, the court "has ways of interpreting ambiguous language, and . . . arbiters of law and fact should strive to make sense of the property restriction and to apply it accordingly."  Id. at *4.  Thus, the mere fact that the parties have conflicting interpretations of the operative clause of paragraph 22 does not automatically render the restriction on assignment unenforceable.  Rather, this Court can take extrinsic evidence and apply rules of construction to interpret the ambiguity.  Further discovery may shed more light on how paragraph 22 is to be interpreted.  Accordingly, this Court finds that to the extent the motions to dismiss argue that the restriction on assignment is ambiguous and therefore unenforceable, they must be denied at this time.

Next, the defendants argue that the plaintiffs' demand for a declaration that the assignments are void and the leases are terminated is inappropriate in that it seeks an impermissible forfeiture.  According to the defendants, the plaintiffs are not entitled to such extreme relief because their complaint is based on nothing more than a breach of an alleged covenant to obtain consent prior to an assignment.  Instead, the defendants contend that if this Court finds that the plaintiffs' consent was required to

assign the leases, the plaintiffs' relief for the breach of that covenant is limited to seeking damages -- not voiding the leases.

In response, the plaintiffs assert that whether forfeiture is appropriate will depend upon the specific language of the leases and also the facts of this case. The plaintiffs claim that it is premature to determine as a matter of law, at this time, that the plaintiffs can make no showing that forfeiture would be appropriate.

Under West Virginia law, forfeitures are disfavored and will not be found or enforced unless clearly provided for in the instrument:

> Forfeiture of estates are not favored in law. The right to forfeit must be clearly stipulated for in terms, else it does not exist. Every breach of a covenant or condition does not confer it upon the injured party. It never does, unless it is so provided in the instrument. Such breaches are usually compensable in damages, and, if a forfeiture has not been stipulated for, it is presumed that the injured party intended to be content with such right as is conferred by the ordinary remedies. The broken covenant or condition relied upon for forfeiture must be found not only in the instrument, by clear and definite expression, but also within the forfeiture clause, by such expression. A covenant or condition merely implied, or an express one not clearly within the forfeiture clause, will not sustain a claim of forfeiture by reason of its breach.

Bethlehem Steel Corp. v. Shonk Land Co., 288 S.E.2d 139, 142 (W. Va. 1982) (citing Peerless Carbon Black Co. v. Gillespie, 105 S.E. 517 (W. Va. 1920)). Moreover, the West Virginia Supreme Court has held that a covenant must be construed to not support forfeiture unless there is no other possible interpretation:

> Another principle to be observed is that, in so far as a covenant is relied upon to sustain a claim of forfeiture, it is always strictly construed in respect of that claim. The instrument must give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction, or it does not exist. In obedience to this principle it is uniformly held that, in case of a doubt as to whether a clause in a deed is a condition subsequent, breach of which would divest an estate, or a covenant breach of which would merely create liability for damages, the provision is such a covenant, and not a condition.

Easley, 112 S.E. at 515 (internal citations omitted).  Applying these principles and analyzing the language of the leases, this Court finds as a matter of law that forfeiture is not appropriate.  Significantly, paragraph 22 does not authorize forfeiture for breach of its terms, nor does any other part of the lease confer any right to declare forfeiture for breach of the assignment clause.  Although the plaintiffs claim that they may be able to develop facts to support forfeiture, the complaint does not plead any such facts.  Thus, the defendants' motions to dismiss must be granted as to their claim that the plaintiffs seek an impermissible forfeiture.

## IV.  Conclusion

For the reasons stated above, the defendants' motions to dismiss (ECF Nos. 9 and 11) are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      May 17, 2012

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE